IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DENISE J. DUVALL**                                                               **PLAINTIFF**

**V.**                   **NO. 4:25CV00120-KGB-PSH**

**FRANK BISIGNANO,**
**COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]          **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.**    **Introduction**:

Plaintiff, Denise J. Duvall ("Ms. Duvall"), filed an application for Title II

---

[1] As of this writing, Frank Bisignano serves as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

disability and disability insurance benefits on September 14, 2021. (Tr. at 14). In the application, Ms. Duvall alleged disability beginning on September 14, 2021. *Id*. The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Ms. Duvall was not disabled. (Tr. at 14-29). On December 11, 2024, the Appeals Council denied her request for review of the hearing decision. (Tr. at 1-6). This decision stands as the final decision of the Commissioner, and Ms. Duvall has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II.   **The Commissioner's Decision:**

The ALJ found that Ms. Duvall meets the insured status requirement of the Social Security Act through March 31, 2026. (Tr. at 16). The ALJ next found that Ms. Duvall had not engaged in substantial gainful activity since the alleged onset date of September 14, 2021.[2] *Id*. At Step Two, the ALJ found that Ms. Duvall had the following severe impairments: morbid obesity, heart disease with heart valve

---

[2] An ALJ must follow the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

repair, congestive heart failure with pacemaker, COPD, depression, and anxiety. *Id*.

After finding that Ms. Duvall's impairments did not meet or equal a Listing,[3] the ALJ determined that Ms. Duvall had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with additional limitations: (1) no more than occasional climbing of ramps and stairs; (2) never climbing ladders, ropes, or scaffolds; (3) must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, and hazards such as dangerous machinery and unprotected heights; (4) can understand, remember, and carry out detailed instructions; (5) can have frequent interactions with co-workers, supervisors and the public; and (6) can deal with frequent changes in a routine work setting. (Tr. at 15-18).

After soliciting testimony from a Vocational Expert ("VE"), the ALJ determined that Ms. Duvall is capable of performing past relevant work as a human resources assistant and a payroll clerk. (Tr. at 27-28). Therefore, the ALJ concluded that Ms. Duvall was not disabled. *Id*.

### III.   Discussion:

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's

---

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent

4

decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Factual Background

Ms. Duvall had a heart condition that required a valve replacement and implantation of a pacemaker before the relevant time-period. (Tr. at 386, 555). An August 2021 stress test was normal and at that time the pacemaker was noted to be functioning normally.[4] (Tr. at 22, 578-580). Cardiac examination was normal. (Tr. at 591). Ms. Duvall's blood pressure was typically well-controlled.[5] (Tr. at 581, 810, 815, 1058). Ms. Duvall saw her doctor in April 2022 for shortness of breath, and he noted that she was in no acute distress but had pitting edema in her lower extremities. (Tr. at 965-957). Ms. Duvall had a BMI of 49, and doctors counseled her to exercise and limit alcohol and salt intake, but she did not lose weight over the relevant time-period, and there is no indication that she followed her doctors' instructions. (Tr. at 808, 1072). She said she ate a lot of junk food. (Tr. at 1074).

---

[4] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

[5] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

While Ms. Duvall went to the hospital for cardiac symptoms in April 2023, she was discharged in good condition two days later. (Tr. at 1452-1462). At a follow up visit in June 2023, she said her medications were working, and blood pressure continued to be well-controlled. (Tr. at 1664-1669). Cardiac examination was normal. *Id*.

Ms. Duvall also alleged that she suffered from anxiety and depression, and the ALJ found these impairments to be severe. (Tr. at 16). She said symptoms got worse after losses in the family, and Ms. Duvall attended therapy. (Tr. at 1085). She took Clonazepam and Citalopram for symptoms, and in 2022, Ms. Duvall told her therapist that her symptoms were controlled with medication and prayer.[6] (Tr. at 1081-1084). Ms. Duvall reported good sleep. (Tr. at 1092). She had generally normal mental status examinations other than depressed mood, showing intact memory and good insight. (Tr. at 1081-1115).

Ms. Duvall said she could do things like drive, prepare simple meals, tend to her personal care, perform chores, shop in stores, attend church, play games, and watch TV.[7] (Tr. at 26, 230-235).

### C. Ms. Duvall's Arguments on Appeal

---

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[7] Such daily activities undermine her claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

Ms. Duvall contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, she argues that the ALJ failed to fully develop the record, the ALJ did not properly evaluate Ms. Duvall's subjective complaints, and the ALJ erred at Step Four.

1. Development of the record

Ms. Duvall contends that the record required further development with respect to an alleged need to elevate her legs during the workday. She also asserts that further development was required because she could not perform the mental function requirements of her past work.[8]

While Ms. Duvall claims that pain and edema in her lower extremities necessitated that she elevate her legs in a work setting, clinic examinations were grossly normal. The ALJ did reference pitting edema and swelling in his decision, but the record only showed "trace" edema. (Tr. at 25, 956, 1510). Moreover, Ms. Duvall did not generally complain of leg pain or swelling and did not require aggressive treatment. No doctor placed a restriction on Ms. Duvall based on edema.

---

[8] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

Ms. Duvall could do a variety of daily activities, undermining her claims. Moreover, while the state-agency reviewing doctors assigned Ms. Duvall an RFC for light work, the ALJ limited her to sedentary work, the most restrictive level of exertion. (Tr. at 25, 62-69). This shows he gave credit to at least some of Ms. Duvall's allegations of pain and extremity swelling. There is no disparity in the evidence with respect to elevating legs that would require further development. The ALJ did not err.

As for mental impairments, the record contained ample evidence for the ALJ to make a decision. Ms. Duvall treated her impairment with therapy and medication, and she said that medications improved her symptoms. She had generally normal mental status examinations. She did not require aggressive treatment or inpatient hospitalization. And again, she could do daily activities requiring mental focus and attention.

There were multiple medical opinions sufficient for the ALJ to make a mental function finding. Dr. Don Ott, Psy.D, examined Ms. Duvall on November 11, 2022, and he found that her capacity to cope with the mental demands of work was adequate. (Tr. at 1070-1077). Her verbal skills were adequate, although she had some trouble with focus and concentration. *Id*. Dr. Ott noted that she had no major conflicts with others, and that she had social contact on most days. The ALJ found

this opinion to be persuasive.[9] (Tr. at 24-25).

Katherine Henkel, LCSW, treated Ms. Duval for mental impairments. She filled out a short checkbox form stating that Ms. Duvall had no useful functional ability in a number of mental work functions.[10] (Tr. at 1834). The ALJ found this opinion unpersuasive because the record showed improvement with treatment and the ability to perform daily activities. (Tr. at 25). The ALJ also considered the state-agency psychological experts' opinions that Ms. Duvall could perform semi-skilled work, and he incorporated those opinions into the RFC. (Tr. at 65-66, 73). Again, no pivotal issue regarding Ms. Duvall's mental impairments was unexplained or unresolved, and the ALJ based his decision on a fully developed record.[11]

2. Evaluation of subjective complaints

When evaluating a claimant's subjective complaints, the ALJ must

---

[9] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi,* 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

[10] Short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. See *Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

[11] The Court observes that Ms. Duvall's attorney said in September 2023, that the record "can now be closed and the case submitted for decision." (Tr. at 369). The hearing was on August 29, 2023, and the ALJ's decision issued on December 18, 2023. (Tr. at 14-28).

consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

The ALJ discussed relatively conservative treatment, positive response to treatment, grossly normal examinations, and the ability to perform daily activities. (Tr. at 21-25). He noted that no physician placed functional restrictions on Ms. Duvall. He covered the required factors in his decision, and he properly found that Ms. Duvall's subjective complaints were not entirely consistent with the balance of the record. (Tr. at 19).

### 3. Step Four finding

The ALJ obtained VE testimony at Step Four to conclude that Ms. Duvall could return to her past relevant work. Again, Ms. Duvall claims that she had a need to elevate her legs during the workday which would preclude her past work. But the ALJ is not required to incorporate every alleged deficit into his decision at Step Four.

He can rely on VE testimony that factors in the credible limitations, not mere allegations. See *Kraus v. Saul*, 988 F.3d 1019, 1027 (8th Cir. 2021). As noted above, Ms. Duvall did not show a continuing need to elevate her legs.

Ms. Duvall also claims that she could only perform unskilled work and that would eliminate her past work. But again, the record shows minimal mental health treatment, to which Ms. Duvall responded positively. As well, her daily activities show she can perform more than simple, unskilled work. The burden is on the plaintiff at Step Four to show she cannot perform past relevant work. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). Ms. Duvall did not carry that burden.

### IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Duvall was not disabled. The record was fully developed, the ALJ properly evaluated Ms. Duvall's subjective complaints, and the ALJ did not err at Step Four. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 1st day of July, 2025.

_____
UNITED STATES MAGISTRATE JUDGE